IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Monica Shrader,** | **Case No.  5:24CV1292** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **Massillon City School District Board of Education, et al.,** | **MEMORANDUM OPINION & ORDER** |
| **Defendants.** | |

Currently pending is Defendant Guy Oberhauser's Motion to Dismiss Count II of Plaintiff Monica Shrader's First Amended Complaint.  (Doc. No. 17.)  Plaintiff filed a Brief in Opposition on February 20, 2025, to which Defendant replied on March 6, 2025.  (Doc. Nos. 19, 20.)  For the following reasons, Defendant's Motion is GRANTED.

**I.     Factual Allegations**

The First Amended Complaint sets forth the following factual allegations.  At all times relevant herein, Plaintiff Monica Shrader (hereinafter "Plaintiff" or "Shrader") and Defendant Guy Oberhauser (hereinafter "Defendant" or "Oberhauser") were employed as teachers at the Defendant Massillon City School District  (hereinafter "MCSD"). (Doc. No. 16 at ¶ 1, 3.)

On September 2, 2022, Shrader filed a lawsuit in this Court against the MCSD, in which she asserted claims for sex discrimination and retaliation under federal and state law based, in part, on alleged actions by Oberhauser during the 2020-2021 and 2021-2022 school years (hereinafter

"*Shrader I*").[1] *See Shrader v. Massillon City School District Board of Education*, Case No. 5:22CV1559 (N.D. Ohio). *See also* Doc. No. 16 at ¶ 10. At that time, both Shrader and Oberhauser were seventh grade teachers. (Doc. No. 16 at ¶ 11.)

On September 30, 2022, the MCSD and the Massillon Education Association ("MEA") "entered into a Memorandum of Understanding, a Hall Plan and Supportive Measures (collectively referred to as "MOU") in which the parties agreed that during full-district professional development events and convocation, [] Shrader and [] Oberhauser would be assigned seats in different locations in the venue." (*Id*. at ¶ 19.) The MOU specified that Oberhauser was not to intentionally encounter Shrader. (*Id*.) Several months later, in February 2023, the parties reached a settlement agreement in *Shrader I* and the matter was dismissed. (*Id*. at ¶ 10.)

Meanwhile, Shrader "bid out" of her seventh-grade position due to the harm caused by Oberhauser, which included "such severe anguish and emotional distress that for the first time in her life she sought counselling to address the severe depression and anxiety she suffered." (*Id*. at ¶ 11.) Shrader bid into the fifth grade, which was housed in the one of the buildings that comprised the Middle School Complex. (*Id*. at ¶ 15.) The MCSD moved Oberhauser to an elementary school

---

[1] For purposes of providing background and context only, the Court briefly summarizes Shrader's allegations regarding Oberhauser in *Shrader I*. In that case, Shrader alleged that Oberhauser made several comments in the workplace about women generally, and about Shrader in particular, that were discriminatory in nature. *See Shrader I*, Case No. 5:22cv1559 (Doc. No. 1 at ¶¶ 12, 13, 15.) Shrader also alleged that, during the Covid pandemic, her students told her that Oberhauser had "licked the computer keyboard, picked up the phone in the room and coughed on it and openly passed gas in the teacher's chair," in a classroom which they both used. (*Id.* at ¶ 14.) After Shrader complained, she alleges that Oberhauser "verbally assaulted" her in front of her student teacher and made her feel "physically threatened." (*Id.* at ¶ 19.) Shrader alleged that Oberhauser "essentially stalked" her outside of her classroom. (*Id.* at ¶ 23.) She also alleged that her students told her that Oberhauser was continuing to make derogatory comments about her. (*Id.* at ¶ 27.) Shrader claimed that, as a result of Oberhauser's conduct, she was ostracized by her peers. (*Id.* at ¶¶ 29, 30, 49, 50.) According to Shrader, in March 2021, the MCSD removed Oberhauser from his seventh-grade position and reassigned him to a high school building to teach students remotely. (*Id*. at ¶ 42.) The Court notes that, while it has summarized Shrader's allegations in *Shrader I*, it will not assume the truth of Shrader's specific allegations in that case in resolving the instant Motion to Dismiss.

physical education position for the 2022- 2023 school year. (*Id*. at ¶ 12.) Even after Oberhauser was reassigned to the elementary school, however, Shrader continued to suffer "severe anguish and emotional distress that would be exacerbated when she would need to attend district-wide meetings of teachers." (*Id*. at ¶ 13.)

Prior to the start of the 2023-2024 school year, Oberhauser bid into a seventh-grade teaching position in the Middle School Complex. (*Id*. at ¶ 14.) The Middle School Complex is comprised of two separate buildings joined by a common central area. (*Id*. at ¶ 15.) Oberhauser was assigned a classroom on another floor in a separate building from where Shrader was teaching her fifth graders. (*Id*.) MCSD Superintendent Paul Salvino told the MEA President that he "was concerned there would be issues" with Oberhauser and Shrader but, despite his concerns, the MCSD took no action to ensure that Oberhauser "would not continue to engage in the retaliatory actions he engaged in that gave rise to" *Shrader I*. (*Id*. at ¶¶ 16, 17.)

Shrader alleges that several incidents occurred during the 2023-2024 school year that caused her extreme emotional distress. On October 20, 2023, at a pep rally for fourth and fifth graders, Oberhauser ("who for some unknown reason served as the emcee even though his seventh grade students were not in the pep rally") "intentionally, with intent to harass and retaliate against Mrs. Shrader, approached Mrs. Shrader in the gymnasium which caused Mrs. Shrader immediate severe anxiety and emotional distress resulting in a panic attack and she had to leave the gymnasium." (*Id*. at ¶ 20.) She fled to another teacher's classroom. (*Id*.) The teacher took her to the restroom where Shrader proceeded to throw up. (*Id*.) She ultimately returned as her class was still in the pep rally. (*Id*.) At that time, Oberhauser was some distance away from her. (*Id*.) While she, staff and students were exiting the gymnasium, Oberhauser stood at the doorway, knowing Shrader would have to pass

3

by him.  (*Id*.)  Shrader was left with no choice but to go past him.  (*Id*.)  This caused, and continues to cause, Shrader "severe anxiety and emotional distress."[2]  (*Id*. at ¶¶ 20, 24.)

Several weeks later, on November 3, 2023, Shrader was teaching her fifth grade ELA class when her students were distracted by Oberhauser "parading his students in the hallway outside her classroom."  (*Id*. at ¶ 26.)  Shrader was caught off guard when the students started saying Oberhauser's name and saying "hi" to him.  (*Id*.)  While Shrader did not see Oberhauser, her students told her he was waving at them and that he had been their gym teacher in the elementary school the previous year.  (*Id*.)  Shrader became agitated and experienced yet another panic attack.  (*Id.* at ¶ 27.)  Her students were concerned because her voice became shaky, and they thought she was upset with them.  (*Id*.)  She did not want to have an anxiety attack or cry in front of her students, so she used a technique learned in therapy to calm her in the moment.  (*Id*.)  Shrader "never expected Mr. Oberhauser to parade his students during his scheduled math class or otherwise, past her classroom when he should have been teaching math according to the Massillon City Schools Schedule for 7th grade, … particularly since his classroom is in a different building in the Middle School complex."  (*Id*.)

After this, another male seventh grade teacher (whose classroom is in the same section of the Middle School complex as Oberhauser's classroom) was on several occasions observed "parading his students past Mrs. Shrader's classroom."  (*Id*. at ¶ 29.)  This male teacher is a colleague of

---

[2] Shrader alleges that MCSD administrators with full knowledge of Oberhauser's prior conduct were present at the Pep rally but did nothing to prevent Oberhauser from serving as emcee at an event they knew Shrader would attend with her students, or to prevent him from encountering Shrader.  (*Id*. at ¶ 21.)  In addition, during and after the pep rally, Shrader complained to her Union representatives who immediately contacted MCSD administrators.  (*Id*. at ¶ 22.)  Shrader alleges that the MCSD did nothing to restrict Oberhauser's conduct.  (*Id*. at ¶ 23.)

Oberhauser, and also allegedly engaged in some of the conduct that was the subject of *Shrader I*. (*Id*.) According to Shrader, "[t]eachers whose classrooms have been in this hallway for years had never seen Mr. Oberhauser, or for that matter any other teachers from his section of the Middle School Complex parade their students in this section of the Middle School complex." (*Id*. at ¶ 30.)

On October 26, 2023, November 3, 2023 and November 8, 2023, Shrader, through her union representative, complained to MCSD administrators about Oberhauser's conduct. (*Id*. at ¶ 31.) On November 9, 2023, Shrader's union representative met with building principals to lodge a complaint against Oberhauser, and Shrader's counsel sent correspondence to Superintendent Salvino about "the harassing and retaliatory actions of Mr. Oberhauser toward Mrs. Shrader." (*Id*. at ¶¶ 31, 34.) Shrader filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") in December 2023, alleging that she was subjected to retaliation due to her complaints about Oberhauser's retaliatory conduct.[3] (*Id*. at ¶ 36.)

The next incident occurred on January 18, 2024. On that date, Shrader attended a 5th grade ice cream social with her students and fellow teachers. (*Id*. at ¶ 39.) No other grades participated. (*Id*.) Oberhauser and the same 7th grade teacher who "paraded his class past Mrs. Shrader's classroom" "left their assigned post, abandoning their assigned duties, and entered the ice cream [social] and began interacting with the 5th grade students." (*Id*.) Oberhauser and his colleague knew or should have known that Shrader would attend the ice cream social with her 5th grade class, and despite the MOU and prior warnings, intentionally encountered Shrader. (*Id*.) Shrader tried to maintain her composure, as she did not want to have an anxiety attack or cry in front of her students.

---

[3] In addition, Shrader and/or her union representative attended "Grievance meetings" with school administrators in December 2023 and January 2024, but the MCSD took "no remedial action" in response to her grievances. (*Id*. at ¶¶ 35, 37, 38.)

5

(*Id.*) However, "[o]nce again, the actions of Mr. Oberhauser caused Mrs. Shrader severe anxiety and emotional distress." (*Id.*) Specifically, Shrader experienced a severe migraine headache and became sick to her stomach. (*Id.*) She was still physically sick the next day and intended to call in sick, but the MCSD cancelled school due to weather conditions. (*Id.*)

On January 18, 2024, Shrader, through her union representative, complained to school administrators about Oberhauser's conduct at the ice cream social. (*Id*. at ¶ 40.) Nonetheless, the following day Superintendent Salvino denied MEA's level three grievance regarding Oberhauser and stated that Oberhauser "is allowed to be near Mrs. Shrader in the workplace." (*Id*. at ¶ 41.) At the urging of the School Resource Office, Shrader met with the Massillon Police Department to complain that she was being subjected to retaliatory conduct by Oberhauser that she felt constituted menacing by stalking. (*Id*. at ¶ 42.) Shrader had an anxiety attack in the middle of the police station and vomited. (*Id.*) The Massillon Police Department investigated the matter and spoke with Oberhauser and a MCSD administrator. (*Id.* at ¶ 43.) According to Shrader, a MCSD administrator told the investigating officer that there was an agreement in place to cover this situation. (*Id.* at ¶ 44.)

Shrader subsequently filed a formal internal Title VII complaint against Oberhauser and Superintendent Salvino with the MCSD. (*Id.* at ¶ 45.) On February 2, 2024, "in retaliation for Mrs. Shrader's protected activity and filing a police report, [] Oberhauser filed a false internal Title VII complaint with the Massillon City Schools alleging that [] Shrader was harassing him." (*Id.* at ¶ 46.) On February 8, 2024, Shrader received a plan from the MCSD that required her and Oberhauser to stay away from their respective classroom areas and to refrain from contact in common areas of the Middle School complex. (*Id*. at ¶ 47.)

On February 21, 2024, the MCSD retained a third party to investigate Shrader's complaints and Oberhauser's complaint. (*Id.* at ¶ 50.) On May 10, 2024, "the third party issued findings that, inter alia, Oberhauser did not engage in any harassment or violate any [MCSD] policies or rules and that the [MCSD] should implement guidelines to prevent interactions between Mrs. Shrader and Defendant Oberhauser." (*Id.*) According to Shrader, during the investigation, Oberhauser "did state [that] he let his anger at Mrs. Shrader take control and he acted inappropriately." (*Id.*)

As a result of Oberhauser's conduct, Shrader "has been ostracized by her colleagues with whom she has had professional and personal relationships for years." (*Id.* at ¶ 81.) She "does not feel safe in the workplace and suffers from extreme daily fear and anxiety as she never knows when Mr. Oberhauser will intentionally and maliciously seek her out." (*Id.* at ¶ 77.) Shrader alleges that, since Oberhauser again began his harassment of her in 2023, she "has daily uncontrolled migraine headaches which cause her severe anxiety." (*Id.*) She also suffers from "panic attacks, fear, anxiety and depression and becomes sick to her stomach to the point of vomiting in the workplace on account of Mr. Oberhauser intentionally encountering her and harassing her." (*Id.* at ¶ 78.) Shrader "continues to seek counselling, therapy and medical treatment to address the fear, anxiety and depression she has and continues to suffer due to the acts of Mr. Oberhauser." (*Id.*)

## II. Procedural History

On July 29, 2024, Shrader filed a Complaint in this Court against MCSD and Oberhauser, asserting the following claims: (1) Title VII Retaliation against MCSD (Count I); and (2) Intentional Infliction of Emotional Distress against Oberhauser (Count II). (Doc. No. 1.) MCSD filed its Answer on September 27, 2024, and Oberhauser filed his Answer on November 12, 2024. (Doc. Nos. 7, 8.)

On December 18, 2024, the Court conducted a Case Management Conference ("CMC"), in which it set the following deadlines: (1) pleadings to be amended and new parties joined by January 9, 2025; (2) non-expert and expert discovery to be completed by September 12, 2025; and (3) dispositive motions to be filed on October 7, 2025. (Doc. No. 14.)

Meanwhile, on December 5, 2024, Oberhauser filed a Motion for Judgment on the Pleadings with respect to Shrader's Intentional Infliction of Emotional Distress claim in Count II. (Doc. No. 12.) Shrader filed a Brief in Opposition on January 6, 2025, and then her First Amended Complaint on January 9, 2025. (Doc. Nos. 15, 16.) In the First Amended Complaint, Shrader asserts the same claims against MCSD and Oberhauser, but includes additional factual allegations in support of those claims. (Doc. No. 16.) On January 10, 2025, the Court denied Oberhauser's Motion for Judgment on the Pleadings (Doc. No. 12) as moot in light of the filing of the First Amended Complaint.

Shortly thereafter, on January 21, 2025, Oberhauser filed a Motion to Dismiss Plaintiff's Intentional Infliction of Emotional Distress claim pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 17.) Shrader filed a Brief in Opposition on February 20, 2025, to which Oberhauser replied on March 6, 2025. (Doc. Nos. 19, 20.)

### III. Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). For purposes of both Rule 12(b)(6) and Rule 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken

as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n.*, 528 F.3d 426, 430 (6th Cir.2008) (quoting in part *Twombly,* 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

**IV. Analysis**

Oberhauser argues that Shrader's Intentional Infliction of Emotional Distress ("IIED") claim should be dismissed because she fails to sufficiently allege any conduct that rises to the level of extreme and outrageous behavior. (Doc. No. 17.) Oberhauser asserts that Shrader relies on four instances to support her IIED claim but notes that, for each of these instances, Shrader does not allege that she had "any actual interaction or contact with" him. (*Id*. at PageID# 112.) Rather, Oberhauser maintains, Schrader alleges that his "mere presence in her vicinity and his filing of an administrative complaint against her caused her to suffer severe emotional distress." (*Id*.) Oberhauser maintains that his "presence in the workplace, even in the context of Plaintiff and Mr. Oberhauser's past workplace experiences, does not constitute a 'most extreme wrong' or a 'gross violence to the norms of civilized society'" sufficient to state a claim for IIED. (*Id.* at PageID# 119) (quoting *Flagg v. Staples The Officer Superstore East, Inc*., 138 F.Supp.3d 908, 921 (N.D. Ohio 2015)). Oberhauser further asserts that "the conduct of filing a complaint against a coworker does not constitute extreme and outrageous conduct" for purposes of an IIED claim. (*Id*.) Lastly, Oberhauser argues that Shrader "makes inadequate, conclusory allegations that [his] presence has caused her severe emotional distress, including migraines and vomiting." (*Id*. at PageID# 120.)

In response, Shrader argues that Oberhauser's Motion should be denied because "his severe and pervasive conduct towards [her] was beyond mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities and was so severe that no reasonable person could endure it." (Doc. No. 19 at PageID# 138.) Shrader maintains that, despite knowing that he was required to stay away from her, Oberhauser intentionally sought her out, enlisted a colleague to harass her, and persistently taunted her, including when she was with her students. (*Id*. at PageID# 143.) She argues that

Oberhauser's conduct "was premeditated and predatory and went beyond menacing by stalking." (*Id.*)  Shrader further maintains that Oberhauser's conduct alleged in the First Amended Complaint "is a continuation of his conduct that gave rise to" *Shrader I* and should be viewed "as a pattern of unwelcome, intentional, or reckless conduct."  (*Id*. at PageID# 138, 145.)  Taken as a whole, Shrader asserts, Oberhauser's "calculated, intentional behavior …. was so extreme as to go beyond all possible bounds of decency."  (*Id.* at PageID# 145.)  Lastly, Shrader argues that she has sufficiently alleged that Oberhauser caused her severe mental distress, including daily fear, anxiety, depression, and vomiting that has prompted her to seek counselling, therapy, and medical treatment.  (*Id.* at PageID# 144.)

In his Reply Brief, Oberhauser argues that Shrader's Brief in Opposition "impermissibly uses conclusory allegations to support her claim," including allegations that his interactions with Shrader were "premeditated" and "predatory."  (Doc. No. 20 at PageID# 150.)  Oberhauser next asserts that IIED claims in Ohio are analyzed using an objective reasonableness standard, "not by a particular plaintiff's subjective sensibilities."  (*Id.* at PageID# 151.)  Oberhauser maintains that "[a]n average member of the community … would not view Mr. Oberhauser's mere presence in his own workplace as 'extreme and outrageous conduct.'"  (*Id.* at PageID# 152.)  He emphasizes that Shrader does not even allege that he talked to her any of the interactions set forth in the First Amended Complaint and that his conduct "cannot and does not, as a matter of law, constitute utterly intolerable behavior, when viewed under an objective, reasonableness standard."  (*Id*.)  Lastly Oberhauser argues that Shrader has failed to provide any authority or case law that establishes that his alleged conduct herein is sufficient, as a matter of law, to state an IIED claim.  (*Id*. at PageID#s 153-154.)

To avoid dismissal of a claim for IIED under Ohio law, a plaintiff must sufficiently allege that: (1) the defendant intended to cause the plaintiff emotional distress or knew or should have known that his actions would result in emotional distress; (2) the defendant's "conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community;" (3) the defendant's actions were the proximate cause of the plaintiff's injury; and (4) the plaintiff's "mental anguish ... is serious and of a nature that no reasonable [person] could be expected to endure it." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 619 (6th Cir. 2014) (quoting *Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio Ct. App. 1983)). S*ee also Ritter v. Board of Education of Arcadia Local Schools*, 535 F.Supp.3d 690, 697 (N.D. Ohio 2021) (quoting *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1100 (6th Cir. 2008)); *Mitchell v. Fujitec America, Inc.*, 518 F.Supp3d 1073, 1102-1103 (S.D. Ohio 2021).

The Ohio Supreme Court has elaborated upon what constitutes "extreme and outrageous conduct" sufficient to support a claim of intentional infliction of emotional distress, as follows:

> " * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
>
> "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam."

*Yeager v. Local Union 20*, 453 N.E.2d 666, 671-672 (Ohio 1983) *abrogated on other grounds by Welling v. Weinfeld*, 866 N.E.2d 1051 (Ohio 2007) (citing Restatement of the Law 2d, Torts (1965) 71, Section 46(1)).  *See also Hayward*, 759 F.3d at 619 (citing same passage); *Wilson v. Columbus Bd. of Educ.*, 589 F.Supp.2d 952, 971 (S.D. Ohio 2008) (same).

As the Sixth Circuit has noted, "[t]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement." *Hayward*, 759 F.3d at 619 (quoting *Baab v. AMR Servs. Corp.*, 811 F. Supp. 1246, 1269 (N.D. Ohio 1993)).  *See also Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999); *Culler v. Exal Corp.*, 193 F.Supp.3d 850, 851-852 (N.D. Ohio 2016); *Rogers v. Horwitz*, 2023 WL 6383796 at * 16-18 (N.D. Ohio Sept. 29, 2023); *Harris v. Pentair Flow Technologies LLC*, 2020 WL 2558028 at * 6 (N.D. Ohio May 20, 2020); *Stewart v. Suarez Corp. Indus.*, 2015 WL 8272951 at *2 (N.D. Ohio Dec. 8, 2015).  Moreover, and notably, "Ohio places a particularly high bar on 'extreme and outrageous' conduct in the employer-employee relationship." *Culler*, 193 F.Supp.3d at 851-852 (collecting cases). *See also Ritter*, 535 F.Supp3d at 696; *Harris,* 2020 WL 22558028 at * 7; *Blair v. Frenchko*, 2023 WL 130838 at * 2 (N.D. Ohio Jan. 9, 2023).

"The issue of whether conduct rises to the level of 'extreme and outrageous' is a question of law."  *Burks v. Dayton Public Schools Bd. of Education,* 212 N.E.3d 1197, 1214 (Ohio App. 2nd Dist. 2023) (quoting *Spitulski v. Bd. of Edn. of the Toledo City School Dist*., 121 N.E.3d 41, 57 (Ohio App. 6th Dist. 2018)).  "A trial court may dismiss a claim for intentional infliction of emotional distress [at the pleading stage] where the alleged conduct does not, as a matter of law, reach the level of 'extreme and outrageous' conduct." *Morrow v. Reminger & Reminger Co., LPA*, 915 N.E.2d 696,

13

714 (Ohio App. 12th Dist. 2009) (collecting cases). *See also 180 Industrial LLC v. Brunner Law Firm Co. LPA*, 2021 WL 4955268 at * 3 (6th Cir. July 13, 2021).

For the following reasons, the Court finds that Shrader has not sufficiently alleged that Oberhauser's conduct was "extreme and outrageous and beyond all possible bounds of possible decency." Accepting the allegations in the First Amended Complaint as true, Shrader has undoubtedly alleged conduct that is inconsiderate and unkind. Indeed, construed in her favor, Shrader alleges that Oberhauser "acted with an intent which is … characterized by 'malice[.]'" *Yeager*, 453 N.E.2d at 671-672. However, the Court finds that Oberhauser's alleged conduct does not rise to the level of intentional infliction of emotional distress under Ohio law, even when considering it in the context of the past alleged incidents between Shrader and Oberhauser set forth in *Shrader I*. Rather, the Court concludes that Oberhauser's alleged conduct of attending two school events when Shrader was present and occasionally "parading past" her classroom with his students (despite knowing that he was supposed to stay away from Shrader) is simply not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* Nor is the fact that Oberhauser filed an allegedly false complaint against Shrader sufficient to constitute "extreme and outrageous" conduct. *See Mitchell*, 518 F.Supp.3d at 1102-1103 (dismissing IIED claim where plaintiff alleged that the defendant made false sexual harassment allegations against her, and finding that "[w]hile false allegations such as those… may be reprehensible, they fall short of extreme and outrageous"); *Adkins v. DuPont Vespel Parts & Shapes, Inc.*, 2007 WL 1643208 at * 2 (Ohio Ct. App. June 7, 2007) ("As a matter of law, we hold that it is not extreme or outrageous to report conduct which may violate company policy, even when the alleged infraction involved no ill will or animus.")

Indeed, courts have dismissed IIED claims at the pleading stage under similar (and, in some instances, arguably worse) circumstances. *See, e.g., Ross v. Path Master, Inc.,* 2023 WL 2477582 at * 6 (N.D. Ohio March 13, 2023) (dismissing IIED claim alleging that defendant's "unlawful conduct" included "extreme ridicule, stalking (being following and watched), …, intimidation, threats of violence, hostile work environment, verbal abuse, abuse of authority, bullying, …., humiliation [and] embarrassment"); *Conrad v. U.S. Bank Nat'l Ass'n,* 391 F.Supp.3d 780, 792 (S.D. Ohio 2019) (dismissing IIED claim alleging that defendants targeted, harassed, bullied, embarrassed, and ultimately discharged plaintiff due to age or in retaliation for complaining about harassment, bullying, and disparate treatment in the workplace); *Wolfe v. Thermo Fisher Scientific, Inc.*, 2009 WL 1255023 at * 2-3 (N.D. Ohio May 4, 2009) (dismissing IIED claim alleging that defendants commented, made fun, ridiculed and made other inappropriate and sexually-charged remarks to plaintiff in the workplace, filed a false charge of sexual harassment against plaintiff, and falsely imprisoned plaintiff for four hours without food or water while they "interrogated, intimidated, harassed, and embarrassed her").

Accordingly, and for all the reasons set forth above, the Court finds that Shrader has failed to allege sufficiently extreme and outrageous conduct required to state a claim for IIED as a matter of law.[4] The Court therefore dismisses Shrader's IIED claim under Rule 12(b)(6).

**V.    Conclusion**

---

[4] Because the Court finds that dismissal is warranted on this basis, the Court need not (and will not) address Oberhauser's argument that Shrader "makes inadequate, conclusory allegations that [his] presence has caused her severe emotional distress, including migraines and vomiting." (Doc. No. 17 at PageID# 120.)

15

For the reasons set forth herein, Defendant Guy Oberhauser's Motion to Dismiss Count II of Plaintiff Monica Shrader's First Amended Complaint (Doc. No. 17) is GRANTED.  Count II of the First Amended Complaint is hereby dismissed.

**IT IS SO ORDERED.**

Date: May 27, 2025

    s/Pamela A. Barker
PAMELA A. BARKER
U. S. DISTRICT JUDGE